UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brian Tinker,

    Plaintiff,

    v.                                            Civil Action No. 2:18–cv–12–wks–jmc

Lisa Menard, Commissioner of the
Vermont Department of Corrections;
Vermont Department of Corrections,

    Defendants.

## REPORT AND RECOMMENDATION AND ORDER
(Doc. 6)

    This action commenced in Vermont state court when Plaintiff Brain Tinker, proceeding *pro se*, filed suit seeking review of several policies allegedly instituted by Defendants Lisa Menard, the Commissioner of the Vermont Department of Corrections, and the Vermont Department of Corrections (DOC). (Doc. 1-1.) Menard and the DOC properly removed the case to this Court on the basis that Tinker's claims involved federal questions under 42 U.S.C. § 1983. (Doc. 1.)

    Presently before the Court is Tinker's *pro se* Complaint and Petition Seeking Emergency Injunctive Relief against Defendant Lisa Menard.[1] (Doc. 6 at 1, ¶ 1.)

---

[1] After Tinker filed his *pro se* Complaint and Petition in state court on December 22, 2017, the Vermont Prisoners' Rights Office filed an appearance in state court on behalf of Tinker on December 29. (*See* Docs. 1-1, 8.) As of this date, the Court has received no additional information from Tinker's counsel. Thus, for the purposes of this Report & Recommendation, the Court treats Tinker's Complaint and Petition as a *pro se* filing.

Tinker is currently in the custody of the Pennsylvania DOC pursuant to an Interstate Corrections Compact contract between Vermont and Pennsylvania. (Doc. 6 at 2, ¶ 5.)  In his Complaint and Petition, Tinker contends that the Pennsylvania DOC requires a $5 co-pay for all necessary medical treatment and that this policy has resulted in the deterioration of his mental health.  (*See* Doc. 6 at 1, ¶¶ 3, 4; Doc. 6-3.)  He also claims that the Vermont DOC Legal Education Director has instituted a policy forbidding prisoners from accessing pre-printed legal forms, which deters prisoners from seeking relief in court.  (Doc. 6 at 2, ¶ 7.)  As a result of these alleged harms, Tinker seeks temporary injunctive relief enjoining the Pennsylvania DOC from demanding the co-pay fees, requiring Menard to provide Tinker with proper medical care, and enjoining the Vermont DOC's alleged practice of denying access to pre-printed court forms.  (*Id.* at 3.)  He also requests that, in addition to granting the temporary injunctive relief, this Court schedule a prompt status conference.

As this case has been properly removed, Tinker's request for "emergency temporary injunctive relief" is governed by Fed. R. Civ. P. 65.  (*Id.* at 2–3); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 441 (1974).  Under Rule 65, the Court construes Tinker's request for injunctive relief as a motion for a temporary restraining order (TRO pending a preliminary injunction hearing.[2]  For the reasons stated below, I

---

[2] Although Tinker's requested relief is not entirely clear from his pleadings, the Court liberally construes Tinker's *pro se* motion.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

recommend that his request for a TRO be DENIED and that a preliminary injunction hearing be scheduled if requested in writing by Tinker's counsel.

## Analysis

Federal Rule of Civil Procedure 65 governs preliminary injunctions and TROs. *See* Fed. R. Civ. P. 65(a), (b). Generally, the purpose of a preliminary injunction is to preserve the status quo during the course of a lawsuit, *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), while the purpose of a TRO is to preserve the status quo until the court can schedule an adversarial hearing for a preliminary injunction. *See Granny Goose Foods, Inc.*, 415 U.S. at 439 ("[U]nder federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."). Further, a preliminary injunction requires a fully noticed hearing between the adversarial parties, while a TRO may be granted *ex parte*. *See* Fed. R. Civ. P. 65(a), (b). For the Court to issue a TRO, the movant must make the following showing:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b); *see also Chapman v. Merch. Mart Properties*, No. 2:07-CV-61, 2007 WL 922258, at *3 (D. Vt. Mar. 23, 2007). To satisfy subsection (A), an immediate and irreparable injury cannot be "remote or speculative but [must be]

3

actual and imminent." *Harris v. Wu*, Case No. 3:17-cv-440(VAB), 2017 WL 2513880, at *3 (D. Conn. June 9, 2017) (internal quotation marks omitted). Moreover, in the Second Circuit, "[t]he same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 272 (N.D.N.Y. 2015). As a result, in addition to "irreparable harm," Tinker must satisfy one of two related standards: "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Id.* (internal quotation marks omitted); *see also Chapman*, 2007 WL 922258, at *4. As discussed below, Tinker has failed to demonstrate "irreparable harm" and to allege sufficient facts to show either "likelihood of success on the merits" or a "sufficiently serious question."

First, Tinker fails to identify any specific facts that clearly show a danger of immediate and irreparable injury. Although he alleges in his motion that his condition has "worsened," (Doc. 6 at 1, ¶ 4), this is not sufficiently specific to show immediate and irreparable injury. Similarly, while the affidavit accompanying his motion contains general claims of prior mental health issues, (Doc. 6-3 at 1, ¶ 2), he identifies no facts showing that these prior issues may cause an actual and imminent injury. His motion also fails to allege that he had been denied medical care because of the challenged co-pay fees. Finally, as to his claims that the Vermont DOC Legal Education Director has instituted a policy forbidding prisoners from accessing pre-

4

printed legal forms, Tinker presents no facts that he has been denied access to such forms. Instead, he has submitted a general and unverified form detailing the copying policies of the Vermont DOC's law librarians. (*See* Doc. 6-1); *see also Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 350 (2d Cir. 2003) ("[W]here a plaintiff alleges injury from a rule or regulation that may only potentially affect [First Amendment rights], the plaintiff must establish a causal link between the injunction sought and the alleged injury.").

Even if Tinker could demonstrate irreparable harm, he does not allege sufficient facts to show either "likelihood of success on the merits" or a "sufficiently serious question." *Stagliano*, 151 F. Supp. 3d 264 at 272. Tinker asserts that Menard's "deliberate indifference" to his medical needs violated his rights under the Eighth Amendment of the U.S. Constitution, Chapter 1, Article 18 of the Vermont Constitution, and 28 V.S.A. § 801. (Doc. 6 at 2.) But his motion is devoid of any facts to support this conclusory statement. *Cf. Anderson v. Williams*, Case No. 3:15-cv-1364 (VAB), 2016 WL 7217588, at *2 (D. Conn. Dec. 13, 2016) ("[Prisoner] must present evidence that, subjectively, the charged prison officials acted with 'a sufficiently culpable state of mind.'" (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Similarly, he neglects to assert any legal basis for his claim that his rights were violated by the Vermont DOC's alleged policy of preventing prisoners from accessing pre-printed legal forms. In sum, Tinker has not alleged specific facts that clearly show an imminent danger of immediate and irreparable injury and that

either demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits of his claim.

## Conclusion

Based on the foregoing, I recommend that Tinker's motion for a TRO (Doc.6) be DENIED.

Given that counsel has entered an appearance on behalf of Tinker, it is hereby ORDERED that counsel for Tinker shall inform the Court and Menard and the Vermont DOC within 14 days of this ORDER in writing whether a hearing under Fed. R. Civ. P. 65(a) is required in this matter.

Dated at Burlington, in the District of Vermont, this 30th day of January 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).