UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brian Tinker,

    Plaintiff,

    v.                              Civil Action No. 2:18–cv–12–wks–jmc

Lisa Menard, Commissioner of the
Vermont Department of Corrections;
Vermont Department of Corrections,

    Defendants.

**REPORT AND RECOMMENDATION**
(Docs. 6, 12)

On December 22, 2017, Plaintiff Brian Tinker, initially proceeding *pro se*, commenced this suit in Vermont state court, challenging several policies allegedly instituted by Defendants Lisa Menard, the Commissioner of the Vermont Department of Corrections, and the Department of Corrections (DOC). (*See generally* Doc. 1-1.) After Tinker filed his *pro se* Complaint and Petition in state court, an attorney from the Vermont Prisoners' Rights Office filed an appearance in state court on behalf of Tinker. (*See id.*) Menard and the DOC properly removed the case to this Court on the basis that Tinker's claims involved federal questions under 42 U.S.C. § 1983. (Doc. 1.) According to this Court's records, Tinker retains his counsel through the Vermont Prisoners' Rights Office, (Doc. 8); to this point, however, Tinker's *pro se* Complaint and Petition has not been supplemented or amended by his counsel.

In that *pro se* Complaint and Petition, Tinker states that he is currently housed by the Pennsylvania Department of Corrections (Pennsylvania DOC) pursuant to the Interstate Corrections Compact (Compact). (Doc. 6 at 2, ¶ 5.) Tinker alleges that Menard and the DOC have impermissibly allowed the Pennsylvania DOC to charge inmates a $5 co-pay for medical treatment in violation of the Eighth Amendment of the U.S. Constitution and further claims that a photocopying policy implemented by the Vermont DOC's Legal Education Director denied him meaningful access to the courts. (Doc. 1-3 at 2; Doc. 6 at 2.)

Presently before the Court is Menard and the DOC's Motion to Dismiss for Failure to State a Claim and for Failure to Join an Indispensable Party. (Doc. 12.) Neither Tinker's counsel nor Tinker has responded to the Motion to Dismiss, even though this Court granted a request to enlarge the time to respond. (Doc. 16.) For the reasons set forth below, I recommend that the Motion to Dismiss be GRANTED and Tinker's Complaint and Petition be DISMISSED.

## Factual and Procedural Background

The spare facts in this case are drawn from Tinker's *pro se* Complaint and Petition, (Doc. 6), and the documents submitted in support of his pleadings. (Docs. 6-1–6-5.) In deciding Menard and the DOC's Motion to Dismiss, the Court accepts as true the factual assertions stated in Tinker's Complaint and draws all inferences in favor of Tinker. *See Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 341 (2d Cir. 2003); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

As noted above, Tinker is currently in the custody of the Pennsylvania DOC pursuant to the Compact contract between Vermont and Pennsylvania. (Doc. 6 at 2,

¶ 5); *see generally* Vt. Stat. Ann. tit. 28, §§ 1601–1621; 61 Pa. Stat. and Cons. Stat. Ann. §§ 7101–7103.  Tinker contends that the Pennsylvania DOC requires a $5 co-pay for all necessary medical treatment and that this policy has resulted in the ongoing deterioration of his mental health.  (*See* Doc. 6 at 1, ¶¶ 3, 4; Doc. 6-3.)  Specifically, Tinker maintains that, where he was previously incarcerated, he received treatment for several severe mental health issues.  (Doc. 6-3 ¶ 2.)  Under the care of the Pennsylvania DOC, however, he has "been trying to get . . . into mental health and [he] keep[s] getting brushed off."  (*Id.* ¶ 4.)  Tinker argues that Menard and the DOC bear responsibility for the Pennsylvania DOC's policy because they "cannot 'contract away' their duty to assure that [Vermont DOC] inmates are provided necessary medical care" and that Menard has the duty to "assure that every Vermont Inmate is provided necessary medical treatment."  (Doc. 6 at 1, ¶¶ 1, 2.)

Tinker also claims that the Vermont DOC Legal Education Director has instituted a policy forbidding prisoners from accessing or photocopying pre-printed legal forms, which deters prisoners from seeking relief in court.  (*Id.* at 2, ¶ 7.)  He alleges that the only means of accessing legal forms is by "pay[ing] to obtain a copy of the necessary form, sit[ting] at a screen and copy[ing] out the form by hand then typ[ing] it out, or print[ing] out the form that has large type across the entire page that states, *Do not copy or print this page* and write out or type the form."  (*Id.*)  According to Tinker, these methods "frustrate and/or deter Vermont inmates from seeking relief from the Courts."  (*Id.*)

3

Based on these two claims, Tinker originally sought both temporary injunctive relief and permanent injunctive relief. This Court previously considered Tinker's claims for temporary injunctive relief, ultimately concluding in a Report and Recommendation that Tinker failed to satisfy the standard for a temporary restraining order under Fed. R. Civ. P. 65. (Doc. 10.) The Report and Recommendation was adopted in full on February 26, 2018. (Doc. 14.)

The Court now considers Tinker's claims for permanent injunctive relief. (Doc. 6 at 2–3.) Based on the purported constitutional violations described above, Tinker asks this Court to enjoin Menard from continuing the Pennsylvania DOC's $5 co-pay policy, to require Menard to provide Tinker with proper medical care, and to enjoin the Vermont DOC's alleged practice of denying access to pre-printed court forms. (*Id.* at 3.) Alternatively, Tinker seeks injunctive relief on the basis that Menard and the DOC's actions violated Vt. Stat. Ann. tit. 28, § 801, and the Vermont constitution. (*Id.* at 2.)

In their Motion to Dismiss, Menard and the DOC first argue that Tinker's claims regarding his medical treatment and the Pennsylvania DOC's co-pay policy should be dismissed because the Pennsylvania DOC is an indispensable party who has not been joined in this matter. (*See* Doc. 12 at 3.) In support of this argument, Menard and the DOC claim that the Compact, as interpreted by the Vermont Supreme Court, does not provide Menard or the DOC with the authority to alter Tinker's conditions of confinement in the Pennsylvania DOC and that, as result, Tinker cannot obtain the relief he seeks without joining the Pennsylvania DOC as a party. (*Id.* at 3–5 (citing *Gundlah v. Pallito,* No. 2010-121, 2010 WL 7789283, at *2

4

(Vt. Dec. 8, 2010) (unpub. mem.)). In addition, Menard and the DOC contend that Tinker has "fail[ed] to state a deprivation of his right to access to courts under the First Amendment." (*Id.* at 6.) Neither Tinker nor his counsel have responded to the Motion to Dismiss.

## Analysis

In this case, as described above, Tinker raises two constitutional violations as the basis for his claim under 42 U.S.C. § 1983: (1) he argues that Menard and the DOC deprived him of his Eighth Amendment right to adequate medical care by allowing the Pennsylvania DOC to charge a $5 co-pay; and (2), he contends that Menard and the DOC violated his First Amendment right to access to the courts. As a remedy for both purported violations, Tinker seeks permanent injunctive relief, which is essentially the same standard as for a preliminary injunction,[1] except that the plaintiff must demonstrate "actual success" on the merits for the Court to issue a permanent injunction. *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987). As discussed in more detail below, in both cases, Tinker fails to plausibly allege a claim upon which relief can be granted; accordingly, because his

---

[1] Under the familiar rubric for a preliminary injunction,

> [T]he Court will grant a motion for a preliminary injunction only if the party seeking the injunction can show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

*Nolen v. City of Barre, Vt.*, No. 2:10-CV-241, 2011 WL 805865, at *6 (D. Vt. Mar. 1, 2011) (quoting *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 476 (2d Cir. 2004)). Here, because I conclude that Tinker's claim cannot succeed on the merits, the Court need not consider whether the balance of hardships tip in Tinker's favor.

5

claim cannot succeed on the merits, his request for injunctive relief should be denied.

## I. Legal Standards

### A. Motion to Dismiss under Rule 12(b)(6)[2]

As an initial matter, the Court notes that, even though Tinker's counsel failed to respond to the Motion to Dismiss, such a failure "does not relieve the Court of its obligation to consider the merits of plaintiff's claims." *Arena v. Irondequoit Police Dep't*, 228 F. Supp. 3d 242, 243 (W.D.N.Y. 2017). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321,322 (2d Cir. 2000); *Guary v. Upstate Nat'l Bank*, 618 F. Supp. 2d 272, 274 (W.D.N.Y. 2009) (observing that, while attorney's failure to respond to motion to dismiss on behalf of client "may be telling, it is not, by itself, fatal to the plaintiff's case"). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[2] As stated above, Menard and the DOC argue that Tinker's Eighth Amendment claims should be dismissed for failure to join an indispensable party under Federal Rules of Civil Procedure 12(b)(7) and 19. As discussed below, however, I conclude that—because Tinker's Complaint fails to plausibly allege that either Menard or the DOC have the authority to control the Pennsylvania DOC's internal policies—Tinker has failed to state a claim that his Eighth Amendment rights were violated by either Menard or the DOC. In other words, even if this Court were to order the Pennsylvania DOC to be joined in this action, Tinker's Eighth Amendment claims against Menard and the DOC would fail. Accordingly, and because Tinker is proceeding *in forma pauperis*, I recommend that the Court exercise its inherent authority under 28 U.S.C. § 1915(e)(2)(B)(iii) to dismiss Tinker's Eighth Amendment allegations against Menard and the DOC for failure to state a claim, rather than for failure to join an indispensable party. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (observing court may *sua sponte* consider mandatory dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(iii)); *see also* Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Further, in this case, although the Court's records indicate that Tinker is represented by counsel, the only document before the Court is the Complaint and Petition Tinker submitted while proceeding *pro se*. (*See* Doc. 6.) Accordingly, the Court reads his *pro se* Complaint and Petition liberally, along with the accompanying documents, and interprets them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Still, the *pro se* nature of Tinker's Complaint and Petition does not exempt him from the requirement that he "must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 515.

    B.    **Section 1983**

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). The Supreme Court has identified two elements of a § 1983 claim: "a plaintiff must allege [(1)]the violation

of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## II.   Sovereign Immunity and Prospective Injunctive Relief

Preliminarily, I note that Tinker brings suit under § 1983 against Menard in her official capacity as Commissioner of the DOC and against the DOC as a state agency. (Doc. 6 at 1, ¶¶ 1, 2). As a result, this Court must consider whether sovereign immunity bars Tinker's claims against Menard and the DOC. For the reasons discussed below, I conclude that his claims are not barred by sovereign immunity because he seeks prospective injunctive relief for an ongoing violation of federal law.[3]

Generally, the Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). This immunity also protects "state officials sued for damages in their official capacity." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). But under the *Ex parte*

---

[3] Of course, any claim for monetary damages would be barred by sovereign immunity because Tinker sues Menard and the DOC in their official capacities. *See, e.g.*, *Koehl v. Dalsheim,* 85 F.3d 86, 89 (2d Cir. 1996) (dismissing monetary damages claim brought against prison superintendent in his official capacity); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are "persons" under § 1983"). Moreover, Tinker's Complaint puts forth no allegations that Menard was personally involved in administering the $5 co-pay levied by the Pennsylvania DOC. As a result, even if Tinker sued Menard in her individual capacity for monetary damages, his claim fails for lack of any allegations pointing to her personal involvement. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an *award of damages* under § 1983." (emphasis added) (internal quotation marks omitted)).

8

*Young* exception to the sovereign immunity doctrine, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that [the] complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005); *Ex parte Young*, 209 U.S. 123, 154 (1908). In order for this exception to apply, however, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart*, 411 F.3d at 372–73 (quoting *Ex parte Young*, 209 U.S. at 154); *Schallop v. New York State Dep't of Law*, 20 F. Supp. 2d 384, 391 (N.D.N.Y. 1998); *Marshall v. Switzer*, 900 F. Supp. 604, 615 (N.D.N.Y. 1995) ("Actions involving claims for . . . injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action.")

Here, Tinker's Complaint and Petition asserts two ongoing violations of federal constitutional law: (1) Tinker alleges that Menard and the DOC continue to allow the Pennsylvania DOC to charge inmates a $5 co-pay for medical treatment in violation of the Eighth Amendment; and (2) Tinker further claims that the photocopying policy implemented by the Vermont DOC's Legal Education Director continues to prevent his meaningful access to the courts. (Doc. 6 at 2.) Moreover, Tinker seeks injunctive relief that may be fairly characterized as prospective.

9

Specifically, he asks this Court to "enjoin [M]enard from allowing PA-DOC to provide necessary medical treatment only upon the agreement to pay co-pay fees," (Doc. 6 at 2), and to "enjoin[] [the VT-DOC's Legal Education Director] from carrying out her policy . . . of refusing inmates access to pre-printed Court forms." (*Id.* at 3.) Taking these allegations in the light most favorable to Tinker, he seeks to be free of the prospective effects of these purportedly unconstitutional policies. In short, at this stage of the proceedings, Tinker's Complaint contains sufficient allegations to avoid the Eleventh Amendment bar to suits against state officers in their official capacity. *See In re Deposit Ins. Agency*, 482 F.3d at 618.

But that does not end the inquiry. As stated above, the *Ex parte Young* "exception only applies in circumstances where the state official has the authority to perform the required act." *Schallop*, 20 F. Supp. 2d at 391; *see also Marshall*, 900 F. Supp. at 615. If Tinker's requested prospective relief is not directed at the officials or individuals who are responsible for the allegedly illegal action, his request for an injunction should be denied. *See Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001). Accordingly, I turn to considering whether Menard and the DOC have the authority to prevent or correct the purported violation of Tinker's Eighth Amendment and First Amendment rights.

### III.   Eighth Amendment Claim

Concluding that the Compact, as interpreted by the Vermont Supreme Court, does not provide Menard or the DOC with the authority to prevent or correct the Pennsylvania DOC's co-pay policy, Tinker's claim against Menard and the DOC for

10

Eight Amendment violations should be DISMISSED and his request for injunctive relief denied because he cannot succeed on the merits of the claim.

The purpose of the Compact is to facilitate the interstate transfer of inmates and to ensure that inmates housed outside of Vermont receive equal treatment along with adequate procedural protections. *See* Vt. Stat. Ann. tit. 28, § 1604(a), (e); *see also Daye v. State*, 171 Vt. 475, 480, 769 A.2d 630, 634 (2000). To ensure this uniform treatment, the Compact provides:

> All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

Vt. Stat. Ann. tit. 28, § 1604(e). In interpreting this subsection, the Vermont Supreme Court has concluded that, although the DOC retains the jurisdictional authority to reassign, transfer, or release out-of-state inmates, *Daye*, 171 Vt. at 480–81, 769 A.2d at 635, those "transferred inmates are subject to the disciplinary authority and rules of the receiving state." *Id.* at 481–82, 769 A.2d at 635–36. For example, in *Daye v. State*, the Vermont Supreme Court held "that [the out-of-state inmates] were not entitled, under the Compact, to the same visitation policy in out-of-state correctional facilities that applied in Vermont facilities." *Id.* at 482, 769 A.2d at 636. In reaching this conclusion, the Supreme Court observed that "[a] common sense reading of these provisions must allow authorities having daily, physical custody of a transferred inmate to determine the discipline, visitation, classification, and grooming aspects of the inmate's incarceration." *Id.* (internal

11

quotation marks omitted); *see also Gundlah,* 2010 WL 7789283, at *2 (concluding that Florida corrections had authority to determine whether plaintiff received kosher diet).

*Daye* controls the extent of Menard and the DOC's authority here. Under that precedent, Menard, as DOC Commissioner, has the authority to enter into contracts pursuant to the Compact. *Daye*, 171 Vt. at 479, 769 A.2d at 634. But neither Menard nor the DOC has the authority to alter the daily rules and procedures of confinement as set forth by the Pennsylvania DOC. Although Tinker claims that "[i]t is well established in jurisprudence that prison officials cannot 'contract away' their duty to assure that its inmates are provided necessary medical care" (Doc. 6 at 1, ¶ 2), he points to no precedent that establishes that position. Instead, *Daye* makes clear "that transferred inmates are subject to the disciplinary authority and rules of the receiving state." *Daye*, 171 Vt. at 481, 769 A.2d at 635.

Thus, because Menard does not have the authority to alter the Pennsylvania DOC's co-pay policy, Tinker's Complaint fails to plausibly allege that Menard and the DOC committed an Eighth Amendment violation sufficient to establish liability under 42 U.S.C. § 1983. Any grievance Tinker has with the daily conditions of his confinement should be addressed to officials in the Pennsylvania DOC, *see Gundlah,* 2010 WL 7789283, at *2, and his request for injunctive relief based on the purported Eighth Amendment claims should be denied. *Cf. Marshall*, 900 F. Supp. at 615 (observing claims for injunctive relief "are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action").

## IV. First Amendment Claim

I next turn to Tinker's claim that the DOC Legal Education Director violated his First Amendment right to access the courts by instituting "a policy that forbids inmates from accessing pre-prepared [legal] forms." (Doc. 6 at 2, ¶ 7.) Unlike Tinker's Eight Amendment claim, it is plausible that Menard and the DOC have a direct connection or responsibility for the policy instituted by the DOC Legal Education Director.[4] Nevertheless, concluding that Tinker's Complaint fails to allege a constitutional violation sufficient to invoke 42 U.S.C. § 1983, I recommend that his First Amendment claim be DISMISSED and his request for injunctive relief denied because he cannot succeed on the merits of his claim.

"Prisoners have a constitutional right of access to the courts that requires states 'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Bounds v. Smith*, 430 U.S. 817, 822, 825 (1977). But this right does not provide an unfettered right to access photocopying services or duplicate prepared legal forms. *Id.* at 416 ("[A]n inmate has no constitutional right to free copies and prison regulations that limit access to such copies are

---

[4] By the same token, although the Vermont DOC's Legal Education Director is not a party to the pending case before this Court, this fact does not conclusively prevent the Court from enjoining the policy implemented by the Legal Education Director. *Cf. Messiah v. Pafumi*, No. 3:12-cv-1582(VLB), 2013 WL 4711154, at *1 (D. Conn. Aug. 30, 2013) ("Because the court does not have in personam jurisdiction over . . . [the] prison officials, it cannot enjoin their actions."); *see also* 11A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2956 (3d ed. 2018) ("A court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired in personam jurisdiction."). At this stage of the proceedings, Tinker's Complaint plausibly alleges that Menard and the DOC held some responsibility over the policy and, thus, could be enjoined from perpetuating the policy. *Schallop v. New York State Dept. of Law*, 20 F. Supp. 2d 384, 391 (N.D.N.Y. 1998) (claim for injunctive relief proper "where the state official has the authority to perform the required act").

13

'reasonably related to legitimate penological interests.'" (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Gill v. Pact Org.*, No. 95 Civ. 4510(LAP), 1997 WL 539948, at *5 (S.D.N.Y. Aug. 28, 1997) ("[N]o constitutional right guarantees access to photocopying or a specified number of law books."). Rather, "[t]his principle . . . requires only that prisoners' access to the courts be adequate, effective, and meaningful, . . . and does not preclude the balancing of prisoners' rights with the legitimate interests of the states, including economic concerns." *Dugar v. Coughlin*, 613 F. Supp. 849, 853 (S.D.N.Y. 1985) (internal quotation marks omitted). To demonstrate that a prison's official policies have prevented an inmate from accessing the courts, the "plaintiff must show that . . . a 'nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)); *see also Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.*, took or was responsible for actions that hindered [the] plaintiff's efforts to pursue a legal claim." (internal quotation marks omitted)).

Here, Tinker's Complaint is completely devoid of any allegation that the policy instituted by the DOC Legal Education Director frustrated or impeded any legal claims that he intended to bring. (*See generally* Doc. 6.) Similarly, while he advances conclusory allegations that the photocopying policy "acts to frustrate and/or deter Vermont inmates from seeking relief from the Courts," (Doc. 6 at 2, ¶ 7), he sets forth no facts pointing to specific incidents when he or other inmates

were unable to pursue legal claims because of the policy. Absent such allegations, Tinker has failed to state a cognizable claim that he was denied access to the courts. *Warburton*, 2 F. Supp. 2d at 312. His First Amendment claim should be dismissed, and his request for injunctive relief should be denied.

## Conclusion

Based on the foregoing, I recommend that Menard and the DOC's Motion to Dismiss (Doc. 12), should be GRANTED and Tinker's Complaint and Petition be DISMISSED. (Doc. 6.) I further recommend that, pursuant to 28 U.S.C. § 1367(c)(3), the Court decline to exercise supplemental jurisdiction over Tinker's claims brought pursuant to the Vermont constitution and Vt. Stat. Ann. tit. 28, § 801. *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (observing that "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well" (internal quotation marks omitted)). Finally, given the substantive defects in Tinker's Complaint and Petition as well as the fact that neither Tinker nor his counsel have responded to the Motion to Dismiss, I recommend that any request to amend the Complaint and Petition be DENIED as futile and dilatory. *See John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) ("Undue delay and futility of the amendment, among other factors, are reasons to deny leave [to Amend]."); *Arena*, 228 F. Supp. 3d at 243.

Dated at Burlington, in the District of Vermont, this 25th day of July 2018.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).